IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVE BUELL and BOB BRUECHER, | |
| Plaintiffs, | |
| v. | |
| RUSH-COPLEY MEDICAL CENTER, INC., | **Jury Trial Demanded** |
| Defendant. | |

## COMPLAINT

Plaintiffs Dave Buell and Bob Bruecher, by and through their attorneys, Caffarelli & Associates Ltd., for their Complaint against Defendant Rush-Copley Medical Center, Inc. ("Rush"), state as follows:

### NATURE OF ACTION

1. Plaintiffs bring this claim because Rush misclassified them as exempt and thus failed to pay them for all hours worked including for hours worked at an overtime rate of pay, in violation of the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. § 105/1 *et seq.* ("IMWL") and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. This is also an action based upon Defendant's failure to compensate Plaintiffs for on-call time pursuant to Company policy and as agreed upon by the parties, in violation of the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. § 115/1 *et seq.* ("IWPCA").

### JURISDICTION AND VENUE

2. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and 29 U.S.C. § 216(b) (right of action under the FLSA).

3. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

4. The unlawful employment practices described herein were committed within the State of Illinois, at the Defendant's facilities located in Cook County. Accordingly, venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5. Buell is an adult resident of Illinois. He has worked as a Picture Archive and Communications Systems ("PACS") Administrator for Defendant since approximately December of 2012. At all times, Defendant has misclassified Buell as "exempt" under the federal and state overtime laws, and has not paid Buell for all hours worked or at an overtime rate for hours worked in excess of forty (40) per week. In addition, Defendant has failed to provide Buell with full on-call compensation as it was required to do pursuant to Rush's policy and the agreement between the parties.

6. Bruecher is an adult resident of Illinois. He has worked for Defendant since approximately April 17, 2000 and has worked in the PACS Administrator position since approximately 2003. At all times, Defendant has misclassified Bruecher as "exempt" under the federal and state overtime laws, and has not paid Bruecher for all hours worked or at an overtime rate for hours worked in excess of forty (40) per week. In addition, Defendant has failed to provide Bruecher with full on-call compensation as it was required to do pursuant to Rush's policy and the agreement between the parties.

7. Plaintiffs are "employees" of Defendant within the meaning of the FLSA, IMWL, and IWPCA.

8. During the course of their employment, the Plaintiffs were not exempt from the maximum hours of the IMWL, 820 ILCS 105/4a, or the FLSA, 29 U.S.C. § 207.

9.   Defendant Rush is an Illinois not-for-profit corporation headquartered in Aurora, Illinois. Rush does business in Illinois, operates facilities in Illinois, and is registered with the Illinois Secretary of State.

10.   Defendant is an "enterprise" as defined in 29 U.S.C. § 203(r)(1), and is engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

11.   Defendant is subject to the overtime provisions of the FLSA and IMWL, and is an "employer" within the meaning of those statutes.

## STATEMENT OF FACTS

12.   Plaintiffs are both current employees of the Defendant.

13.   Throughout his employment, Buell has performed his job satisfactorily.

14.   Throughout his employment, Bruecher has performed his job satisfactorily.

15.   At the time that this lawsuit was initiated, both Buell and Bruecher were employees in good standing with the Defendant, and were not facing disciplinary action, a reduction in pay, a change in scheduling, a reduction in hours, or termination.

**Defendant Misclassified Plaintiffs as Exempt**

16.   As PACS Administrators, the Plaintiffs shared similar job training, job descriptions, job duties, job requirements, and compensation plans, amongst other things.

17.   As PACS Administrators, Plaintiffs were responsible for the day-to-day general operation of PACS equipment including image workflow, archiving, auto-routing, pre-fetching, and other related activities. Plaintiffs routinely installed and updated operations systems, and uninstalled old systems. They installed and tested new hardware, and configured and tested new pieces of equipment to ensure functionality.

18. As PACS Administrators, Plaintiffs also installed system updates for the PACS equipment, transitioned new vendor systems, and resolved operational problems as they arose.

19. Essentially, Plaintiffs performed "help desk" services for approximately 25 pieces of specialized PACS equipment and systems, used across several departments that relied upon medical imaging. Their primary duties included providing support to users of these systems at any and all hours of the day.

20. In performing their job duties, the Plaintiffs were required to follow Defendant's procedures and protocols. Specifically, they were tasked with ensuring that all department, hospital, and Joint Commission on Accreditation of Healthcare Organizations ("JCAHO") guidelines were met for operation.

21. Plaintiffs were not required or permitted to exercise discretion or substantial independent judgment with respect to the work they performed.

22. At all times, Plaintiffs were subject to the management and oversight of Tom Markuszewski, the Director of Imaging.

23. Neither Plaintiff had the authority to hire or fire employees.

24. Neither Plaintiff had as his primary duty the right to exercise of discretion or use substantial independent judgment with respect to matters of significance to the Defendant.

**Defendant Did Not Properly Pay Plaintiffs for Overtime**

25. Plaintiffs, as PACS Administrators, were improperly classified by the Defendant as "exempt" from the overtime provisions of the IMWL and FLSA.

26. Plaintiffs were paid on a salary basis and did not earn any type of overtime payment if and when they worked in excess of forty (40) hours per week.

27. As of the date of this filing, Buell's annual salary was approximately $108,534.40, which equates to an hourly rate of $52.18 based on a forty-hour workweek. This hourly rate was accurately reflected in Buell's earnings statements.

28. As of the date of this filing, Bruecher's annual salary was approximately $107,265.60, which equates to an hourly rate of $51.57 based on a forty-hour workweek. This hourly rate was accurately reflected in Bruecher's earnings statements.

29. Plaintiffs' salaries were intended to cover forty (40) hours per week.

30. Specifically, the Plaintiffs worked a regular schedule of five days per week, Monday through Friday from 8:00 a.m. until 4:30 p.m. This daily shift was intended to include one uninterrupted half-hour lunch break.

31. As routine practice, the Plaintiffs had to work both before and after their normal scheduled hours in order to do their jobs properly. For instance, Plaintiffs regularly had to set up or troubleshoot equipment for early-morning meetings or urgent situations, attend to problems with the network, or install hardware or software for users of Rush's network outside of their regularly-scheduled shifts.

32. As a result of having to come in early or stay late, both Buell and Bruecher regularly worked an average of at least 2 hours per week beyond their regular schedules (not counting on-call time actively worked, addressed below).

33. Plaintiffs also routinely worked during their lunch breaks, taking calls or accepting pages. Plaintiffs did not often have a full uninterrupted half hour of lunch, meaning that they regularly worked at least 2 additional uncompensated hours each week during lunch breaks as part of their regular schedule.

5

34. Defendant knew or should have known that Plaintiffs were unable to take their full uninterrupted lunch breaks.

35. Defendant knew or should have known that both Plaintiffs regularly worked overtime each week, in addition to their regular schedule.

36. When necessary, for instance when Plaintiffs were asked to install PAC and/or Hospital system updates, or had to install or implement new vendor systems, Plaintiffs were required to work additional overtime hours beyond their average weekly overtime and average active on-call work.

37. Typically, PACS system updates occurred quarterly and lasted for 6-7 hours. Hospital system updates occurred twice per quarter and each lasted between 6.5-9.5 hours.

38. Some projects, such as a project that occurred between April and November of 2016 uninstalling an old GE system and implementing a new MERGE PACS system, were extremely time-consuming and required Plaintiffs to work long overtime hours. Plaintiffs estimate, for example, that they worked over 150 additional overtime hours from April-November 2016 for this PACS Vendor transition, alone.

39. Defendant knew or should have known that at times that Defendant required Plaintiffs to perform discrete and time-consuming projects such as system updates and transitions, Plaintiffs worked significant additional overtime hours.

40. Plaintiffs worked a significant number of captive on-call hours as described below, and further actively worked an average of ten (10) hours of overtime during their on-call shifts as described below.

6

41. With respect to any on-call time paid to Plaintiffs as described below, Rush failed to incorporate the correct on-call rate into Plaintiffs' "regular rate" for purposes of calculating what should have been paid as the overtime rate.

42. Plaintiffs were not paid any type of overtime rate (i.e., at least one and one-half their regular rates of pay) for hours worked in excess of forty (40) hours per week.

43. In lieu of paying overtime, Defendant sometimes permitted Plaintiffs to accrue and use compensatory time off ("comp time") when Plaintiffs worked a significant number of hours beyond their regularly scheduled shifts.

44. However, this comp time was most frequently "cashed in" during the week and/or weeks following the workweek in which the Plaintiffs actually worked the extra hours. Sometimes, this would fall within the same two-week pay period as the date on which the extra hours were worked; sometimes, this would fall outside the two-week pay period as the date on which the extra hours were worked.

45. In addition, when Plaintiffs worked extra hours, Defendant frequently failed to bank comp time *or* pay Plaintiffs at the overtime rate; Defendant simply did not compensate Plaintiffs for overtime hours, or allow them to take time off during the workweek in which Plaintiffs worked extra hours.

46. Defendant failed to accurately track or record the Plaintiffs' hours of work, and continues to fail to track or accurately record Plaintiffs' hours of work as of the date of this filing.

47. Beginning in or around July 2017, Plaintiffs manually recorded the hours that they actively worked during their on-call shifts and submitted those hours to Defendant. However, until July of 2017, as described below, Rush only ever paid them their salaries for

forty (40) hours of work per week and did not provide any call compensation or overtime compensation pay.

48. Defendant knew or should have known about its obligations to pay Plaintiffs at an overtime rate for any hours worked in excess of forty (40) hours per workweek.

**Defendant Failed to Properly Pay Plaintiffs Per Rush's On-Call Policy**

49. In addition to their regular scheduled shifts, Plaintiffs at all relevant times worked an on-call rotation, such that they were and are required by Defendant to alternate weeks of being on-call 24 hours a day.

50. Accordingly, Buell and Bruecher have been required to coordinate vacations, holidays, medical appointments, and family engagements to ensure that Rush has one of them on captive on-call at all times.

51. When on-call, Plaintiffs are required to take pages and calls, respond to e-mails from staff and vendors, and make visits based on the calls as necessary.

52. While on call, Plaintiffs are required to remain within a reasonable distance of Rush such that Plaintiffs are able to respond as necessary to deal with issues on-site. They must also have pager and cell service that allow them to receive communications from Rush and vendors.

53. While on-call, Plaintiffs cannot be under the influence of alcohol or any drugs that would prevent them from responding to requests or coming in to work.

54. Plaintiffs typically must respond to pages, calls, and emails within 5-10 minutes of being contacted. They are also expected to be able to work on-site as needed, based on the specific issue.

55. Plaintiffs are effectively unable to use their time effectively for their own purposes when they are on-call.

56. Plaintiffs estimate that while they are captive on-call for the duration of their on-call weeks, they each also typically spend approximately ten (10) hours over the duration of their weekly on-call time actively responding to requests from Rush each week.

57. As part of the ongoing employment relationship with Rush, Plaintiffs and Defendant agreed that the parties would each adhere to, and be bound by, Rush's policies and procedures regarding compensation.

58. Since 1998, Rush has maintained a "Call-Compensation" pay policy establishing the compensation policies for hospital personnel for on-call, call-back, stand-by, and/or emergency staffing.

59. Rush's Call Compensation policy has always provided that staff would receive special compensation rates per hour for being readily available to perform work.

60. Specifically, Rush's Call Compensation policy provides that employees in Imaging (which included Plaintiffs) would be paid $4.00 per on-call hour.

61. The Call Compensation policy provides that employees who are actually called into work on-site shall be paid for that time at a rate of one and one-half their regular rate of pay.

62. The Call Compensation policy further provides that when an employee must actually report in to work while on call, they shall receive a minimum of two hours of pay.

63. In addition to the Call Compensation policy being clearly laid out in Defendant's written policies and procedures, managers at Rush confirmed to Plaintiffs on several occasions that they were entitled to additional compensation pursuant to Rush's Call Compensation policy:

- In or around 2006, Help Desk Manager Sarah Thompson informed Bruecher that he was supposed to receive on-call pay.

- In or around 2012, Steven Jenkins informed Bruecher that he was supposed to receive on-call pay. In 2018, by which time Jenkins worked as Manager of IT Engineers, Jenkins reiterated to Bruecher and Buell that they were supposed to receive on-call pay.

- In or around December 2012, Thompson confirmed again to both Bruecher and Buell that they would "of course" receive on-call pay. Thompson even volunteered that some of her subordinates earned up to $10,000 per year extra with on-call pay.

64. Despite the agreement between the parties that Plaintiffs would and should receive on-call pay, Rush failed to provide Plaintiffs with any type of compensation pursuant to the Call Compensation policy until approximately July 2017.

65. In or around April 2017, Plaintiffs balked at working additional hours without extra pay when starting a new special cardiology PACS project. They spoke to IS Project Manager Felicia Rodriguez about their concerns. Rodriguez expressed shock, saying that both Plaintiffs were "on-call employees" and confirming that she had believed that both Plaintiffs had received on-call pay for the work they did over the past several years.

66. Following this conversation with Rodriguez, and in light of the significant amount of work that Plaintiffs were being asked to handle, Plaintiffs met with Defendant's Human Resources Manager, Terri Horton, on or around May 25, 2017 to discuss their compensation.

67. During that meeting, Horton agreed that Plaintiffs should clearly have been compensated pursuant to Rush's Call Compensation policy for all the on-call and call-in work they performed over the course of their employment. However, Horton informed them that they "should not expect any back pay at all because the Hospital is in a budget crisis."

68. On June 20, 2017, Horton sent an e-mail titled "Call pay" to both Plaintiffs stating:

> Hey guys… I met with Dave [Petasnick, Assistant VP of Ancillary Services] today and he is in agreement that you should be receiving call pay at the $2.30/hour rate (same as I.T.). He still needs to meet with Tom [Markuszewski] regarding this so this is not something that will begin tomorrow... but soon I would hope. I will let you know when/if I receive an update. If I do not hear from Dave by the end of this week I will follow-up with him. We need to give him some time to have this discussion. Let me know if you have any questions. Thanks for your patience… I know this has taken, per usual, more time than you would have liked. BUT… we are moving in the right direction.

69. Following this correspondence, Plaintiffs began to receive a portion of the Call Compensation policy pay in or around July 2017, at the rate of $2.30 per hour.

70. Plaintiffs have never been paid at the proper on-call rate pursuant to the Call Compensation policy, which states that staff in the Imaging department are to receive $4.00 per hour for on-call time.

71. Defendant improperly instructed Plaintiffs that they would be paid for only 15 minutes per page while on-call. Accordingly, no matter how long Plaintiffs spent responding to a page, they were only paid for – at most – 15 minutes of time at their regular hourly rates.

72. When Plaintiffs were required to report to work while on-call, they were not paid for a minimum of two hours of time despite the clear Call Compensation policy.

73. Often, Defendant failed to compensate Plaintiffs fully for the time that Plaintiffs reported that they worked while on-call.

74. Defendant failed to compensate Plaintiffs at their regular rates and/or overtime rates for any hours on-call that were "captive on call."

75. As a result of Rush's practices described herein, over the last ten (10) years Plaintiffs have not been paid their full compensation pursuant to Defendant's Call Compensation policy, and continue to be improperly compensated pursuant to that policy as of the date of this Complaint.

11

76. At all times, Defendant knew or should have known that Plaintiffs were entitled to compensation pursuant to the Call Compensation policy.

## COUNT I
## FAIR LABOR STANDARDS ACT

77. The Plaintiffs re-state and incorporate the above paragraphs as though fully set forth herein.

78. This Count arises from Defendant's violation of the FLSA, 29 U.S.C. § 201, *et seq.*, for its failure to pay the Plaintiffs overtime wages for all hours worked in excess of forty (40) per workweek.

79. Pursuant to the FLSA, for all weeks during which the Plaintiffs worked in excess of forty (40) hours, they were entitled to be compensated with overtime wages at the rate of one and one-half their regular rates of pay.

80. Defendant violated the FLSA by failing to compensate the Plaintiffs with overtime wages all hours worked in excess of forty (40) per workweek.

81. Defendant violated the FLSA by failing to compensate Plaintiffs for hours worked prior to or following their regularly scheduled shifts and/or for lunch breaks when Plaintiffs were not able to take a full uninterrupted break.

82. Defendant violated the FLSA by failing to add the hours worked during on-call time into the weekly totals for Plaintiffs' hours worked.

83. Defendant violated the FLSA by failing to incorporate on-call time into the regular rate calculations in order to ascertain the proper overtime rates for Plaintiffs.

84. Defendant's failure to pay proper and full overtime wages for all hours worked over forty (40) per workweek is a willful violation of the FLSA, since Defendant's conduct

shows that they either knew that their conduct violated the FLSA or showed reckless disregard for whether their actions complied with the FLSA.

WHEREFORE, Plaintiffs Buell and Bruecher respectfully request that this Court enter an order as follows:

a) Awarding judgment for back pay equal to the amount of all unpaid overtime compensation for the three years preceding the filing of this Complaint, according to the applicable statute of limitations for willful violations of the FLSA;

b) Awarding liquidated damages in an amount equal to the amount of unpaid overtime compensation found due pursuant to 29 U.S.C. § 216(b);

c) Awarding prejudgment interest with respect to the amount of unpaid overtime compensation;

d) Awarding reasonable attorneys' fees and costs incurred in filing this action;

e) Entering an injunction precluding Defendant from violating the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*; and

f) Awarding such additional relief as the Court may deem just and proper.

## COUNT II
## ILLINOIS MINIMUM WAGE LAW

85. The Plaintiffs re-state and incorporate the above paragraphs as though fully set forth herein.

86. This Count arises from Defendant's violation of the IMWL, 820 Ill. Comp. Stat. 105/1, *et seq.*, for its failure to pay the Plaintiffs overtime wages for all hours worked in excess of forty (40) per workweek.

87. Pursuant to the IMWL, for all weeks during which the Plaintiffs worked in excess of forty (40) hours, they were entitled to be compensated with overtime wages at the rate of one and one-half their regular rates of pay.

88. Defendant violated the IMWL by failing to compensate the Plaintiffs with overtime wages all hours worked in excess of forty (40) per workweek.

89. Defendant violated the IMWL by failing to compensate Plaintiffs for hours worked prior to or following their regularly scheduled shifts and/or for lunch breaks when Plaintiffs were not able to take a full uninterrupted break.

90. Defendant violated the IMWL by failing to add the hours worked during on-call time into the weekly totals for Plaintiffs' hours worked.

91. Defendant violated the IMWL by failing to incorporate on-call time into the regular rate calculations in order to ascertain the proper overtime rates for Plaintiffs.

92. Defendant's failure to pay proper and full overtime wages for all hours worked over forty (40) per workweek is a willful violation of the IMWL, since Defendant's conduct shows that they either knew that their conduct violated the IMWL or showed reckless disregard for whether their actions complied with the IMWL.

WHEREFORE, Plaintiffs Buell and Bruecher respectfully request that this Court enter an order as follows:

a) Awarding judgment in an amount equal to all unpaid back pay owed to Plaintiffs pursuant to the IMWL;

b) Awarding prejudgment interest on the back pay in accordance with 815 Ill. Comp. Stat. 205/2;

c) Awarding statutory damages pursuant to the formula set forth in 820 Ill. Comp. Stat. 105/12(a);

d) Awarding reasonable attorneys' fees and costs incurred in filing this action;

e) Entering an injunction precluding Defendant from violating the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et seq.*; and

f) Ordering such other and further relief as this Court deems appropriate and just.

## COUNT III
## ILLINOIS WAGE PAYMENT AND COLLECTION ACT

93. Plaintiffs incorporate the above paragraphs as though fully set forth herein.

94. The parties agreed that Plaintiffs would be employed and compensated by Defendant pursuant to Rush's policies and procedures.

95. Defendant was obligated to pay the Plaintiffs pursuant to the terms of its Call Compensation policy, in place since at least 1998.

96. Defendant was obligated to pay the Plaintiffs at the stated rates for all time that that they worked pursuant to Rush's Call Compensation policy.

97. Prior to July 2017, Defendant did not pay the Plaintiffs any additional compensation (beyond their salary for 40 hours) pursuant to the Call Compensation policy.

98. After July 2017, Defendant began to pay the Plaintiffs additional compensation (beyond their salary for 40 hours) per the Call Compensation policy, however Defendant paid Plaintiffs at the improper rate and did not pay Plaintiffs for a minimum of two hours each time they had to report to work while on-call.

99. Defendant violated the IWPCA by failing to fully and properly compensate the Plaintiffs at the agreed-upon rate(s) pursuant to the Call Compensation policy.

WHEREFORE, Plaintiffs Buell and Bruecher respectfully request that this Court enter an order as follows:

a) Awarding judgment in an amount equal to all unpaid straight time back pay owed to Plaintiffs pursuant to the IWPCA;

b) Awarding prejudgment interest on the back pay in accordance with 815 Ill. Comp. Stat. 205/2;

c) Awarding statutory damages pursuant to the formula set forth in 820 Ill. Comp. Stat. 115/14(a);

15

  d)  Awarding reasonable attorneys' fees and costs pursuant to 820 Ill. Comp. Stat. 115/14(a);

  e)  Entering an injunction precluding Defendant from violating the IWPCA; and

  f)  Ordering such other and further relief as this Court deems appropriate and just.

**Plaintiffs request a trial by jury**

Dated: May 22, 2018         Respectfully submitted,

Alejandro Caffarelli, #06239078     DAVID BUELL and BOB BRUECHER,
Lorrie T. Peeters, #06290434
Caffarelli & Associates Ltd.       By: /s/ Alejandro Caffarelli
224 N. Michigan Ave., Ste. 300       Attorney for the Plaintiffs
Chicago, IL 60604
Tel. (312) 763-6880

Ethan G. Zelizer
HR Law Counsel, LLC
50 S. Main St., Ste. 200
Naperville, IL 60540
Tel. (630) 551-8374